All in case numbers 17-5864 and 17-6001, the United States of America v. Daequan Davis and the United States of America v. Lamont Fortune. Oral argument is 10 minutes for each defendant, 20 minutes for the plaintiff. Mr. Carter for defendant Daequan Davis. May it please the court, David Carter for Daequan Davis. I will reserve five minutes if necessary for rebuttal. The appellant raises three issues. I just want to point out something that was submitted in the reply. The appellant agrees with the government's argument that the ineffective assistance of counsel argument should be made at the district court level for a fuller record. The first issue I wanted to address was the issue of the unfair sentencing act. And the reason being is this presents a bit of a novel issue. If you look at the government's response papers, the government relies heavily on Mr. Davis' plea to justify going around the fair sentencing act. And the reason why I point that out is because this raises an issue that is of a great deal of debate even today in terms of sentencing reform. And that is if the government's only evidence is a willingness for a defendant who at best was reluctant to plead guilty to a story that essentially establishes the basis for going around the fair sentencing act, you're going to swallow the act. The act will essentially become nonexistent because the government will always be able to point to he pleaded guilty to it. And the problem with that is that there is no evidence. There is no evidence of an elaborate drug operation. Mr. Davis had no money. They didn't recover any assets. The only thing they have is his pleading guilty and reluctant at that to the alleged evidence in this case, which is that he had a particular quantity of drugs and that over a period of time he sold a particular amount of drugs. And the reason why I bring that up as well is when you look at the district court, they enter the judgment, and the government points out in terms of the fact that the district court didn't want to enter a money judgment. They entered a forfeit judgment. But you'll also notice that the judge entered that Mr. Davis should participate in a drug rehabilitation program while incarcerated. So at best, the court was conflicted because there's no evidence. They didn't recover any cars and any money, any house. The only thing you have is Mr. Davis's plea, which the court actually had to reschedule because he was reluctant to plead guilty. In the other case, we've got the video of the traffic stop and the high-speed chase by the co-defendant. Do we not? You do have the government alleges it. And the government's argument in that other case is this was his route that he picked. This is the co-defendant. Yes. That he picked up the cocaine, and this was his M.O., his modus operandi, and that's why he fled. And, I mean, isn't that some least circumstantial evidence that these guys are picking up cocaine and running in their cars and stuff? I mean, you know, flight is evidence of guilt. It is, Your Honor. The reason why we make the argument in terms of the act, the act was actually enacted to make sure there were no sentencing disparities. If you can easily get around it with a plea, the district court wasn't fully comfortable with what the government was asking for. That's why you have the entering of a forfeit of, I think it was $212,000, but also entering a judgment that said he should participate in a drug rehabilitation program. Was he a drug dealer or was he a drug addict? And in a situation like that where the court is conflicted, and the district court had probably the best, I would say the best view of looking at the evidence in terms of making the assessment. And we want to make sure that there is no sentencing disparity. That's not to say that every defendant who pleads guilty, that that shouldn't be enough. But in this circumstance, Mr. Davis' case that was entered on a plea, there is no independent evidence in the record in terms of that he actually possessed a large quantity of money and actually sold a large quantity of drugs. So to tie him to a conspiracy, the court just wants to be very careful that you don't undo the very purpose for which the Fair Sentencing Act was enacted. That's why I say it's a bit of a novel issue. Exactly what would you have the district court do? It should be to make at least a determination in terms of the credibility of the government's plea. I'm not saying that it's going to be beyond reasonable. You're out of time unless you want to take some of your rebuttal time. I'll use one minute of rebuttal on the second issue, which was Mr. Davis' reluctance to plead guilty. The government makes the argument that his frustration was with the particulars in terms of what was used in the sentencing report. And the district court made clear to Mr. Davis that that would not be used for purposes of sentencing, but the frustration continued because it was more than frustration. Mr. Davis was reluctant. The court had to actually reschedule it and tell the parties that they needed to get their act together, and this was beyond just simple frustration, Your Honor. All right. Thank you. Good morning. May it please the Court, Jeff Brandt for Mr. Fortune. Mr. Fortune has raised several issues on appeal and subject, of course, to the Court's redirection of the argument. Is there time for one more? Oh, I'm sorry, yes. Three minutes, please. All right. My apologies. Subject to the Court's redirection with its questions, Mr. Fortune was hoping to address the Rule 404B argument and then the reckless endangerment argument. Excuse me. The government sought to admit a videotape, and the videotape showed Mr. Fortune being pulled over and evading arrest, flight. The objection was made that the videotape would be extrinsic evidence, prior bad act, and should be excluded if admitted that its potential for unfair prejudice would substantially outweigh any probative value. The District Court first concluded that it was related, first because of time, that this occurred during the conspiracy. One of our arguments on appeal is that's not enough. There is case law that says that's a good factor in support, but we haven't found any cases that say just because it's at the same time of a conspiracy that it's enough to show that they are related. And just to highlight, going through the Court's three factors from Haywood, that's Haywood with an A, that's the second factor, whether they're related. The first is, is there evidence to support that this prior bad act occurred? Obviously, if what that prior bad act is is the evasion, there's no question that the government has met that factor. We're not arguing that he didn't run. But in fact, I think that helps show why unnecessary, certainly, at worst for the government. But if the government's going to ask to show this evidence, if needed at all, is it relevant? And the question is, okay, is flight relevant to the existence of a conspiracy? And if so, how is that not unfairly prejudicial? We obviously don't want to convict defendants based upon what they've done in the past. And evasion certainly can prejudice the minds of the jurors. We cited some case law and some research about when juries hear prior bad acts and make a jump to that conclusion, there's no limiting instruction that could possibly undo what the jury has heard in that conclusion that they've made. This is a person that would run from a police officer. He's a criminal. He's more likely to have committed the charged offenses. We argue that when it comes to whether the flight was related to a conspiracy, at best the government's evidence isn't evidence of seeing someone throw drugs or finding drugs. It is a claim of two co-conspirators motivated by their cooperation agreements saying that the defendant, Mr. Fortune, bragged about throwing drugs. I thought the co-defendant's testimony was this was the route he took when he picked up cocaine and he brought it back. And here he was stopped, and after his flight he shows up and doesn't have the cocaine that he normally has when he does this route. And therefore, he stopped actually while he's doing the bidding of the conspiracy. He's on his normal route. It's part of his modus operandi for the conspiracy, and he's stopped. He's caught, and that's why he flees. We have a lot of case law that flight is evidence of guilt. It can be excluded if it violates 403. If the prejudicial value substantially outweighs its relevance. But why isn't this relevant to the conspiracy and the way the conspiracy was committed? As opposed to an other bad act. Prior other bad acts are acts that are not related to what is charged. And here, this goes to the heart of why he's charged. He's going in his car to pick up cocaine, and he's doing this on a regular basis. Judge Griffin, other than your statement that he was on the route, that he happened to be on the route, that he was on a street that could be shown in the route, everything else you just summarized came from those co-conspirators' claims. You say they don't have credibility, but the judge is the assessor of their credibility. And let's assume that that credibility is correct under that cloud of them being housed in the same jail and having an opportunity. Let's assume that. That's it. Quite a bit, though, isn't it? I mean, it ties it up. It would show that if they're credible, this really is relevant to the conspiracy. I mean, you can see that, don't you? So then the stretch is that a videotape of flight? Let's talk about that probative value. Isn't that substantially outweighed by the prejudice of the jury? Is it the tape or the fact that you would allow the officers to testify that he evaded arrest, but you wouldn't let the video actually showing it? Is that your argument? We're obviously asked to suppress both. I wasn't trial counsel, but it was to suppress both. It's the evasion. The videotape makes it worse. The evasion shows that there's conscious evidence of guilt by this co-defendant. Of what, though? He likely picked up the cocaine, got stopped, and he took off because guess what? He knows he's got cocaine in the car. I mean, at least that's a reasonable inference anyway. And the inference could also be that he was caught with marijuana, had a record, and he was found eating the marijuana. Sure. I mean, there can be other reasonable inferences, but to say that it shows it's not related to the conspiracy I think is kind of a stretch because it certainly may be related to the conspiracy. If Your Honor and the court conclude so, we would go to the argument that it's substantially outweighed by the danger of unfair prejudice because jury's here. He's a guy that runs from the police. Look, it's a videotape. Now it's like an episode of Cops. It gets a little bit more too salacious, too excitable. It's real. It's actually what happened. I mean, it may be prejudicial, but it's because it actually happened. Isn't it for the jury to decide here where there's a disagreement that we're hearing again today about whether these facts support or don't support what inference you drew? Isn't that why we have the jury? Your Honor, it's the pillars of our system, but we also have to realize that we're humans and the amount of studies that show that once a jury member hears that someone's done something in the past that's criminal. So your argument really is intrinsic or extrinsic because if it's extrinsic, you may win. If it's intrinsic, you likely lose your argument. Agree? Yes. And that's why we're arguing both. But if it's extrinsic, we would certainly hope that we would win. And if it's intrinsic, we're hoping that the court would find that it was unduly prejudicial. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the court, Bill Roach for the United States. I'd like to briefly address one issue on Davis and then I'll spend the majority of my time responding to Mr. Fortune's arguments. Mr. Davis's counsel mentioned that somehow this plea agreement suggests that the United States was trying to go around the Fair Sentencing Act. I just want to be very clear that there's no evidence in the record to support that claim. Davis admitted to being personally responsible for distributing 9,000 grams of crack cocaine, which is 32 times the limit that triggers the mandatory minimum for the Fair Sentencing Act. He's kind of arguing that his statement or his testimony as to the amount isn't enough, that you actually have to have some physical evidence to support it. Is that the law? That is not the law, Your Honor. We have his statements, his admissions in the plea agreement. I would also respond, there was physical evidence here in Mr. Davis's plea agreement. At page 301, he took officers to his apartment after he had told them some facts regarding the conspiracy, and the officers recovered over $4,000 in cash and 45 grams of crack cocaine in his apartment. So not only do we have Davis's admissions in the plea agreement, which of course the district court confirmed at the change of plea hearing, we also do have physical evidence in this case. And just to add some context to the two plea agreements here, I'm not aware of any evidence in the record of the court suggesting that the parties get their act together or come up with a new plea agreement. This was simply the case of the first plea agreement. The parties had bargained over it, had crossed out a number of paragraphs in that plea agreement, and for the sake of clarity, the parties entered a new plea agreement much cleaner, without the paragraphs that were crossed out. So I don't think there was any, at least the record does not reflect any encouragement or suggestions by the district court judge that the parties reach any new agreement. This was a plea that was bargained and exchanged just between the parties.  And I'd like to spend the rest of my time addressing Mr. Fortune's argument. So with respect to this video, the probative value of the video here was high. The video corroborated both Laughley's and Dargan's testimony. Not only that Fortune was driving to North Carolina to pick up crack cocaine, the video also explains why Fortune told Laughley and Davis that he tossed crack cocaine from the vehicle. So Fortune comes back on May 2nd to this gathering at Laughley's house. Laughley and Dargan both testified that every time Fortune had come back from North Carolina, they had purchased crack cocaine from him. Well, that evening he shows up empty-handed, and so naturally Laughley and Dargan are wondering, you know, where is the crack cocaine? Where is the crack cocaine? I mean, I know he took off. Well, we don't know. Did they look for it? They just couldn't find it? I mean, somebody probably picked it up then. Well, that's quite possible, Your Honor. You know, with the video and Laughley and Dargan's testimony, in addition to the testimony of the officer, it was tossed out somewhere between mile marker 19 and 20 on I-77 North. Why isn't it there? I mean, I assume they went over there and they couldn't find it? It's unclear from the record, Your Honor. We don't know from the record. But that brings up another good point of why an additional factor of why the video is probative here. We have a former deputy, Bottomley, who testified that he did not see Fortune toss the crack cocaine from the vehicle. And so a jury left without that video may have reason to think, why did Deputy Bottomley not see him if he was trailing him? Well, the video shows that Fortune sped away and lost Deputy Bottomley for at least a couple minutes, which would have given Fortune enough time to toss the crack cocaine from the vehicle. So the vehicle, not only does it corroborate Laughley and Dargan's testimony, it also adds context to Deputy Bottomley's testimony. So the probative value here is high. Prejudicial value, if any, is very, very low. All we have here is video of someone who's fleeing from a traffic stop. That does not suggest that the person is participating in a large-scale crack cocaine distribution conspiracy. It may show that they are breaking the law in some way or they're trying to hide something from law enforcement, but it is not unduly prejudicial with respect to the charge of offense here. Was there any limiting jury instruction that would have told the jury to only consider the video in such and such a way, or was that not suggested by either party? Well, Your Honor, that brings up a good point. The judge actually offered to both parties to provide a Rule 404B curative instruction on the first day of trial. It's on page 1967 of the record. And neither party at the end of trial requested a curative instruction. Is that issue forfeited then because defense counsel did not request a curative instruction? Well, perhaps it should be ruled under plain error, given the fact that the defense counsel objected in the beginning and then did not renew that objection. No, because he didn't take the opportunity to have a curative instruction. Correct, Your Honor. Correct, at the end of trial. He had the opportunity and then he did not follow through with the judge's offer. Do they respond on appeal to that argument? Do they say that it just wouldn't have cured it? I don't remember right now. I'm not aware of anything in their briefs that say that, Your Honor. If this really wasn't 404B evidence, then you wouldn't need an instruction to play devil's advocate, is that it? That's right. That is the case here, Your Honor. It's not 404B evidence. It's relevant evidence, which is admissible under Rule 402. 402, you still have 403, don't you? That's right, Your Honor. That's why I addressed the high probative nature of the evidence and the very low prejudicial value. I don't think there's any way that fortune can show that even if this evidence has some prejudicial effect, it certainly does not substantially outweigh the high probative value of this video evidence. For many of the same reasons that the video evidence is admissible here, it also supports the district court's judgment on the reckless endangerment enhancement. It shows a nexus between fortune's flight from law enforcement and the fact of the charged conspiracy. Here, the more related they are, the more relevant the evidence is. The more related they are, the more we have a nexus here to prove up the two-level enhancement for reckless endangerment. So the judge did not err in applying that enhancement. The additional arguments here that Mr. Fortune makes with respect to the 851 information, briefly there, there's no indication in the record that Mr. Fortune was ever confused about which conviction the United States intended to rely on to apply the enhanced mandatory minimums. And in any event, the fortune's guidelines range was 262 months to 327 months, which is above the 20-year mandatory minimum. So in the grand scheme of things, that 851 notice had no effect on Mr. Fortune's sentence. Finally, your honors, Fortune's sentence was substantively reasonable. The judge considered all of the 3553A factors, and the judge made a remark at the end of sentencing that after considering those factors, he felt that the 272-month sentence, which was closer to the bottom of Fortune's guideline range, was, quote, absolutely necessary. And so unless this court has any further questions on any of the issues that Davis raised or Fortune raised, I'll cede the rest of my time to the court and rest on our brief. All right. Thank you. Thank you. Any rebuttal? No rebuttal? All right. Thank you. Oh, you do have rebuttal. Okay. If I may. Sure. Judge Griffin, we do in our brief talk about curative instructions and that impact. I didn't go into the case law in the brief when it comes to the rules about a lack of curative instruction not waiving, but I think this court's case law is clear that there's strategic reasons. Even if you object to the evidence, there's strategic reasons not to then ask for limiting instruction, but that does not waive the argument that the evidence should have been submitted. Okay. So that's your argument that it was a matter of strategy not to request the curative instruction? Tell me what the strategy is here. Why? I'm not saying it's the strategy in this case. Oh, well, if it's not the strategy in this case, what does it matter? I mean, tell me what the strategy in this case is. This is my response to the question of whether the argument's waived by not asking for a curative instruction. Oh, it could. Okay. In other cases, it may not be forfeited. But in this case, is it forfeited or not? No, Your Honor. Tell me why not. There's strategic reasons not to ask for limiting instruction because that highlights. What was this? Okay. Tell me what the strategic reason in this case was not to ask for a curative instruction. It highlights the evidence at the end of someone's testimony. There's a limiting instruction read that gives the jury another opportunity to hear the evidence again. That's why it was not requested here? Correct. Okay. Also, the government mentioned plain error. Plain error obviously should not apply. Plain error is meant to apply when there's an issue that the district court judge has not ruled on. No, it's when the issue's been forfeited, when you haven't preserved your objection. That's what they're arguing, that you had an opportunity to request the instruction, you didn't do so, and therefore you've forfeited the issue by not preserving the issue. That's the argument. When the issue's not preserved, then we go to plain error. And it's certainly preserved here because the lack of request for a limiting instruction does not waive an objection to the admission of evidence. Otherwise, we'd be forced to have limiting instructions in every case to preserve an argument for an appeal when many times there's good reasons not to have the jury hear that evidence yet again. The government's brief, and then again in its argument, submits that the videotape corroborates Lofty and Dargan's testimony that Fortune was a member of the conspiracy and that he regularly drove to Winston-Salem to buy crack cocaine. But the videotape doesn't corroborate either of those things. It doesn't show that he's a member of the conspiracy, and it doesn't show any regularity at all. It's just one instance, one snapshot of what happened, and we don't think that that creates such a high probative value that the government suggests. We submit that it's low probative value and substantially outweighed by the prejudice. Thank you. Thank you very much. The case is submitted. There being no further cases for argument, court may be adjourned.